HENRY HESTERBERG

v.

MARY A. CLARK et al.

166   241
209   591

*Filed at Mt. Vernon April 1, 1897.*

1. WILLS—*executor may appeal from decree setting will aside.* One named as executor in a will, who is made defendant in a proceeding to set the will aside and on whose answer to the bill issue is joined, has such an interest in sustaining the will as entitles him to appeal.

2. SAME—*proponents need not prove will where their adversaries prove it for them.* Where those attacking a will offer evidence establishing, *prima facie*, its validity, it is error to direct a verdict against such validity, though the proponents of the will offer no evidence.

3. SAME—*invalid alteration does not revoke will.* An alteration made by a testator in his will, which fails for want of proper attestation, leaves the original will in full force.

4. SAME—*interlined clause is void, unless will is re-attested.* A clause interlined in a duly executed will is invalid if unsigned and the will not re-attested, though the alteration is made by one of the witnesses by direction of the testator, and in his presence and in the presence of the other witness.

WRIT OF ERROR to the Circuit Court of Monroe county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.

SLATE & BOLLINGER, for plaintiff in error:

An interlineation made in the presence of one witness and the scrivener, who at no time subscribed as a witness, does not render the will void. *Doane* v. *Hadlock*, 10 Me. 72; *Wheeler* v. *Bent*, 7 Pick. 61; Hurd's Stat. 1893, chap. 148, sec. 17.

A valid will once existing must continue in force unless revoked in the mode prescribed by the statute. *Wolf* v. *Bollinger*, 62 Ill. 368; Hurd's Stat. 1893, chap. 148, sec. 17.

The object of courts, in all cases, is to give full effect to the testator's intention. *Doane* v. *Hadlock*, 10 Me. 72.

In case of an erasure or interlineation without a new attestation of a will after its due execution, the court will disregard the same and probate the will according to its original draft. 1 Redfield on Wills, 314, 325; *Wolf*

v. *Bollinger,* 62 Ill. 368; *Wheeler* v. *Bent,* 7 Pick. 61; *Jackson* v. *Halloway,* 7 Johns. 394.

CHARLES MORRISON, (TURNER & HOLDER, of counsel,) for defendants in error:

The widow, Margaret Mathews, and the two sons, Francis and Thomas, are the persons to whom the pretended will gives the bulk of the property. Neither of these three persons denies the allegations of the bill. By their default they admit them. They are under no legal disability. They were duly served with process, hence their default admits every material allegation of the bill. *Hummert* v. *Stempel,* 31 Ill. App. 551; *Laird* v. *Allen,* 82 Ill. 43; *Moore* v. *Titman,* 33 id. 366.

An executor cannot use the assets of the estate in such litigation. He is a nominal party, only, and when the real parties in interest are satisfied with the adjudication of the circuit court he should not be allowed to fritter away the estate in useless litigation. *Shaw* v. *Moderwell,* 104 Ill. 64; *Moyer* v. *Swygart,* 125 id. 276.

The burden of proving that an instrument offered as a will was executed under all the necessary conditions to make it legal and valid is cast by law upon the proponents of the same,—those who seek to maintain its validity as a will. *Tate* v. *Tate,* 89 Ill. 42; *Pendlay* v. *Eaton,* 130 id. 69; *Craig* v. *Southard,* 148 id. 37.

The action of the court in taking a case away from a jury will always be sustained, when the evidence before the jury is such that a verdict different from the one directed by the court would be set aside if returned by the jury. *Alexander* v. *Cunningham,* 111 Ill. 515; *Railroad Co.* v. *Carey,* 115 id. 115; *People* v. *Madison County,* 125 id. 334.

The indispensable requisites of a will are, that it must be signed by the testator, or by some one in his presence and by his direction, and be attested in his presence by two or more witnesses. *Rigg* v. *Wilton,* 13 Ill. 15; *Canatsey* v. *Canatsey,* 130 id. 397.

Mr. Justice Carter delivered the opinion of the court:

Defendants in error filed their bill in chancery in the circuit court of Monroe county to set aside the will, and the probate thereof, of Thomas Mathews, deceased. The bill alleged that the testator was of unsound mind and memory; that the execution of the will was procured by falsehood, misrepresentation and undue influence of the devisees, and that it was not the will as made and executed by the testator as and for his last will, but was fraudulently presented as and for an instrument in writing which he had executed purporting to be his last will and testament.

The facts are briefly these: On February 13, 1895, the testator, desiring to make his will, sent for one Powderly, a school teacher, and Thomas J. Mathews, his grandson, and by the direction of the testator Powderly wrote the will when they were all together, and it was then and there signed by the testator, and, as witnesses, by Powderly and Thomas J. Mathews, as required by the statute. As executed the will contained eight paragraphs, dividing the testator's estate among his wife, Margaret, and his sons, Francis Mathews, Thomas Mathews, Jr. and Joseph Mathews, with legacies to each of his six daughters. There was also a paragraph numbered "lastly," appointing Henry Hesterberg as executor. Two days after this will was executed the testator again sent for the two witnesses, and Powderly, at his request and in his presence and in the presence of the other witness, inserted in the instrument, after the eighth paragraph, the following:

"*Ninth*—In addition to what I have already bequeathed to my beloved wife, I give her all the wheat I have in the granary, excepting, however, enough to pay my taxes due in the year 1895."

The will was not again signed by the testator or the witnesses, and no note or memorandum of the addition was endorsed on the will. Powderly testified that the

testator said "we should witness that he wanted to give his wife that much extra in addition to what he gave her beforehand," but that he did not ask them to sign again. He died a few days thereafter. The plaintiff in error, Hesterberg, as executor, was made one of the defendants to the bill, and he alone has prosecuted this writ. He answered the bill, denying its allegations, but the other defendants, except the infants, suffered default.

When the cause came on for hearing, the defendants, who were the proponents of the will, offered no evidence, but the complainants introduced the original will and probate thereof, with the certificate of proof taken in the county court, and also examined the subscribing witnesses. The witness Powderly was the only one interrogated in the circuit court respecting the testator's mental capacity. He testified: "His mind was as clear * * * as my mind or your mind. He was as clear as any man was, in my mind." On motion of the complainants, the court instructed the jury to find that the instrument was not the last will of said Thomas Mathews, deceased. The jury rendered their verdict accordingly, and a decree was entered in conformity therewith, and that the said will and probate thereof be set aside and held for naught.

The first contention of defendants in error is, that the principal defendants below, the widow and two sons, the chief beneficiaries, by their default admitted all the material allegations of the bill, and that the executor has no such interest in the litigation as would authorize him to appeal or prosecute a writ of error, and counsel cite *Shaw* v. *Moderwell,* 104 Ill. 64, and *Moyer* v. *Swygart,* 125 id. 262. These cases decide that the executor, if pursuing the personal interests of devisees by his appeals to the courts, must look to them for his costs if unsuccessful, and cannot charge the estate. As he was named executor by the will, he was interested in sustaining it. He was made defendant to the bill and issue had been

made on his answer, and we see no reason why, subject to the contingency of having to pay the costs like other suitors, he would not have the right to bring the record here for review. It was his duty, under the statute, to cause the bill to be proved and recorded. (Administration act, sec. 2.) It had been set aside in a suit to which he had been made a defendant. He had the undoubted right to have the error, if any, corrected on appeal or writ of error.

Defendants in error contend that as the defendants below offered no evidence they failed to establish a *prima facie* case, and, therefore, the instruction of the court to the jury was proper. This contention is without force, for the reason that the complainants themselves furnished the proof which they now claim should have been made by the defendants below. By offering the evidence themselves they waived the advantage which they now seek to take. The complainants put in evidence the will and the certificate of the oaths of the witnesses in the probate court, besides the testimony of the subscribing witnesses, and thereby established a *prima facie* case for proponents of the will. *Holloway* v. *Galloway*, 51 Ill. 159; *Carpenter* v. *Calvert*, 83 id. 62; *Pendlay* v. *Eaton*, 130 id. 69.

The next contention of defendants in error is, that the decree should be sustained because the will was never legally executed, there having been no re-attestation of the instrument, as it is claimed, after the insertion, by interlineation, of the ninth clause. Under the rule laid down by the authorities the insertion of the ninth clause after the execution and attestation of the will did not work a revocation of the will or render it invalid as originally executed. In *Wolf* v. *Bollinger*, 62 Ill. 368, this court said (p. 371): "The power to try and determine whether the writing produced be the will of the testator or not, includes the power to adjudge upon the validity of any part of the instrument, as well as the whole. * * * It is the rule that a valid will, once existing,

must continue in force, unless revoked in the mode prescribed by statute. * * * It has been often determined, in the construction of similar statutes, that the mere acts named, of cancellation or obliteration, will not constitute a valid revocation, unless done with the intent to revoke. * * * It is believed to be the doctrine, as laid down in Redfield on Wills, 314, 325, 327, and well settled by the authorities, that when the testator makes an alteration in his will by erasure and interlineation, or in any other mode, without authenticating such alteration by a new attestation in the presence of witnesses or other form required by the statute, it is presumed that the erasure was intended to be dependent upon the alteration going into effect as a substitute, and such alteration not being so made as to take effect, the will, therefore, stands, in legal force, the same as it did before, so far as it is legible after the attempted alteration."

It is very clear that the court below erred in giving the instruction in question to the jury and in entering the decree setting aside the will, for if it be conceded that the ninth clause interlined was invalid, the whole will was not, for that reason, revoked or rendered invalid. There was no intention on the part of the testator to revoke his will. He simply desired to make a slight alteration by interlining an additional bequest to his wife, which, if it fail for want of proper attestation, leaves the original will in full force. *Bringle* v. *McPherson*, 2 Brev. 270; 1 Redfield on Wills, 325, 326; *Wright* v. *Wright*, 5 Ind. 389; *Jackson* v. *Holloway*, 7 Johns. 394; *Greer* v. *McCracken*, J. Peck, 301; *In re Wilcox's Will*, 20 N. Y. Supp. 131; *Doane* v. *Hadlock*, 42 Me. 72; *Wheeler* v. *Bent*, 7 Pick. 61.

The ninth clause inserted in the will by interlineation cannot be sustained as a part of the will. It was not signed and attested with the formalities required by the statute. In this respect, while recognizing the force of the reasoning employed in the opinion, we cannot agree with the conclusion reached by the Supreme Court of

Indiana in *Wright* v. *Wright, supra,* where a new provision was inserted in a will a few days after its execution,— a case practically on all fours with this. It was there said: "But why should the bequest added on the 4th of March be deemed no part of the will? It was inserted by the same scrivener who wrote the original will, in the presence of the testator and by his express direction. The instrument was already signed by the testator. The witnesses who had subscribed the will when first executed were also present. They recognized the paper on which their names were signed and saw the provision inserted. This would seem to be a sufficient compliance with the statute. The mere re-writing of their names to the instrument would have added nothing to the importance of the transaction. Under the circumstances it would have been a useless ceremony. The law, therefore, did not require its performance. We are decidedly of the opinion that the will, including the new provision, was duly executed and attested." Notwithstanding the ninth clause was inserted only a few days after the execution and attestation of the will as first made, and was so inserted by one of the attesting witnesses at the request of the testator, and in his presence and in the presence of the other attesting witness, still, this new provision was never attested in the manner provided by the statute, and we cannot regard the position taken in the *Wright case,* that a re-attestation of the will was unnecessary, as sustained by the authorities, or as, in this State, being in accord with the provisions of the statute in regard to wills. In addition to the cases above cited, see 1 Am. & Eng. Ency. of Law, 941, note 1,—citing *Hindmarsh* v. *Charlton,* 8 H. L. Cas. 160, and *In Goods of Maddock,* L. R. 3 P. D. 169; also, 29 Am. & Eng. Ency. of Law, 264.

In commenting on the Indiana case, Mr. Redfield in his work on Wills, (vol. 1, 325, 326,) says: "But it may be questioned how far this case is entirely reliable as a ground of action in future cases. The thing being done

in this mode, and the alternative being presented of either supporting it or nullifying the act, might some time induce courts to maintain it under such circumstances, so that we could not regard the case as a safe precedent to be followed in other cases. And if the rule that the witnesses must re-write their names in order to constitute a re-witnessing of the instrument, after an alteration, is to be regarded as fully established, there could be no question of the unsoundness of the preceding case."

It is not enough that the witnesses are present when the will is executed, but they must subscribe the instrument. If a codicil be added, even in their presence, they must subscribe it also as attesting witnesses, and where an alteration is made in the will by interlineation, there is no reason, in principle, why the statutory requisites may be dispensed with or the formalities required in the other cases mentioned disregarded. Indeed, prudence would dictate that where an interlineation is made it should be noted in an attestation clause to be signed by the witnesses, for, the interlineation appearing or being shown, the presumption is, in the absence of proof, that it was made after the execution of the will, and if, when the instrument is presented for probate, the witnesses are dead or in parts unknown, mere proof of their signatures to the original will, as provided for by the statute, would not establish the matter interlined as a part of the will. But even where it is shown, as in this case, that the attesting witnesses were present when the interlineation was made by one of them at the request of the testator, to hold that a re-attestation of the will as changed, or an attestation of the interlined part evidenced by a re-signing by the witnesses, is unnecessary, would be to dispense with a substantial requirement of the statute, and would lead to uncertainty and confusion as to the law in the proof of wills.

Our conclusion is, that the interlined ninth clause was void, and the jury should have been so instructed, but that the court erred in instructing the jury, as the proof stood, so far as the original will was concerned, to find that it was not the last will of the deceased.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein stated.

*Reversed and remanded.*