DAVID GOODWILLIE *et al.*

*v.*

DAVID MILLIMANN.

1. CONTEMPT — *refusing to pay a money decree — mode of enforcing payment of such decree.* Even if a court of chancery has the power to commit a party to jail for a failure to comply with a decree of the court, and there is no other ground for regarding him as in contempt, such remedy should not be resorted to unless there are no other reasonable means for its enforcement. In analogy to the constitution the remedy of enforcing decrees by imprisonment should be limited to cases of necessity only.

2. There seems to be no more reason for declaring a party in contempt

| 56 | 523 |
|---|---|
| 27a | 517 |
| 56 | 523 |
| 28a | 544 |
| 56 | 523 |
| 60a | 179 |
| 56 | 523 |
| 164 | 498 |
| 56 | 523 |
| 167 | 510 |
| 56 | 523 |
| 173 | 413 |
| 56 | 523 |
| 91a | [8]252 |
| d91a | [1]398 |
| 56 | 523 |
| e103a | [8]506 |
| 56 | 523 |
| 209 | [7]508 |
| 56 | 523 |
| e213 | [8]101 |

of court for failing to pay a money decree than for refusing to pay a judgment at law.

3. And *quære,* whether, in any case, the statute authorizes a court of equity to imprison for a failure to pay a money decree.

4. In a proceeding for the partition of lands, a decree of partition being entered on a default by the defendants, together with their admissions, the court, under the act of 1869, authorizing the chancellor, in cases of that character, to decree the payment of a solicitor's fee, allowed and taxed a counsel fee of $2,500, and decreed that the same be paid forthwith : *Held,* upon failure of one of the parties to pay the portion of such fee decreed against him, the action of the court, in adjudging him guilty of contempt for such failure, and ordering his committal to the county jail, was without authority of law.

5. The statute having declared that such fees should be taxed as costs, and no mode being provided for their collection, the statute having failed in terms to provide any, it must be presumed it was intended they should be governed by the cost act in the mode of their collection, as also in re-taxing, replevying and other incidents. And that provides their collection may be compelled by execution.

6. COSTS — *re-taxing the same.* The amount of the solicitor's fee having been ascertained by the court, from evidence heard in open court, but, in the absence of the defendants, a motion made by them to re-tax the fee should have been allowed. Though if the parties had been in attendance in court, or had they been specially notified of the time when the motion to tax the costs of the solicitor's fee would be made, and they had failed to introduce evidence, or they had been heard on the motion, they would then have had no reason to urge a re-taxation.

7. PRESERVING EVIDENCE — *in the record.* As a rule of practice the evidence upon which such an allowance is made should be preserved in the record.

8. COSTS — *solicitor's fee — how ascertained.* In taxing such fees the chancellor, having the requisite skill and knowledge to form some idea as to what is a fair and reasonable compensation, while he should consider the opinions of witnesses, and evidence of the sum usually charged and paid for such services, should exercise his own judgment and not be wholly governed by the opinion of attorneys as to the value of the services rendered.

WRIT OF ERROR to the Superior Court of Chicago ; the Hon. JOHN A. JAMESON, Judge, presiding.

The opinion states the case.

Messrs. SPAFFORD, McDAID & WILSON, for the plaintiffs in error.

Mr. THOMAS SHIRLEY, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court :

Defendant in error filed his bill in equity in the Superior Court of Chicago, for the partition of certain real estate owned by him and plaintiffs in error as tenants in common.   A decree of partition was entered on a default by the defendants in the court below, together with their admissions.   The court allowed and taxed a counsel fee of $2,500, and decreed that the same be paid forthwith.   The decree required plaintiff in error Goodwillie, to pay one-twelfth part of the fee.   The amount of the solicitor's fee was ascertained by the court from evidence heard in open court, but in the absence of plaintiff in error Goodwillie, and without special notice to him.   A motion was filed to re-tax the solicitor's fee, and an offer was made to support it by evidence, but the court refused to hear the evidence or entertain the motion.   For having failed to pay his share of the fee decreed to the counsel, Goodwillie was adjudged to be in contempt of court, and was ordered to be committed to the common jail of the county until the further order of the court.

Even if a court of chancery has the power to commit a party for a failure to comply with any decree, and there is no other ground for regarding him as in contempt, the remedy seems to be harsh, and should not be resorted to unless there are no other reasonable means for its enforcement.   In a large class of money decrees the constitution has prohibited imprisonment, unless there is fraud on the part of the debtor, or he shall refuse to surrender his property for the satisfaction of his debts.   When such a regard is shown by the people, in adopting the fundamental law, for the liberty of the citizen, the remedy of enforcing decrees by imprisonment should be

526          GOODWILLIE *et al.* *v.* MILLIMANN.          [Sept. T.,

Opinion of the Court.

limited to cases of necessity only, in accordance with the spirit that dictated the constitutional restriction. Courts of equity proceed upon the principles of justice, and should act as justly in regard to the liberty of parties as to their rights of property. We fail to perceive any more reason for declaring a party in contempt for failing to pay a money decree than he would be for refusing to pay a judgment at law. We are not prepared to say that the statute authorizes a court of equity to imprison in the first instance for a failure to pay a money decree.

In this case, however, there can be no question that such imprisonment was unauthorized by law. This decree was under the act of 1869, which, for the first time, authorized the chancellor, in cases of this character, to decree the payment of a solicitor's fee. That act declares that the fee shall be taxed as costs. Having declared that it shall be taxed as costs, it thereby becomes costs, and has all of the incidents of costs, as no mode has been provided by that statute for their collection. Having failed, in terms, to prescribe any mode, we must conclude that it was intended it should be governed by the cost act, not only in its collection, but in re-taxing, replevying and other incidents. The statute relating to costs (Gross' Comp. 144, § 15) has provided that, on the dismissal of complainant's bill, the defendant shall recover full costs, and in all other cases in chancery not otherwise provided for, it shall be in the discretion of the court, and the payment of costs, when awarded, may be compelled by execution. This section has pointed out, in clear and unequivocal terms, the manner in which costs shall be collected in chancery cases. And it is so clearly expressed, that the language will not bear construction. The legislature manifestly intended this mode to be pursued and 'to exclude all others. But if it was susceptible of construction, we should not give it so harsh an interpretation, and thus deprive the citizen of his liberty. The canons of construction have always required the courts, in favor of liberty, to give doubtful statutes a benign interpretation. If, then, it could be said that this class of costs might be held, without doing vio-

lence to the language of the law, not to be embraced in this section of the cost act, we would not adopt it when a less rigorous one presents itself. Courts have no right, unless clearly required to do so, to deprive individuals of their liberty. The court below erred in ordering the committal of Goodwillie for a contempt in failing to pay these costs.

It is next urged that the court below erred in refusing to re-tax these costs. The legislature having required the solicitor's fees to be taxed as costs, no reason is perceived why they may not be re-taxed as other costs. If the parties had been in attendance in court, or had they been specially notified of the time when the motion to tax the costs of the solicitor's fee would be made, and they had failed to introduce evidence, or they had been heard on the motion, they would then have had no reason to urge a re-taxation. It is so obviously just and equitable that a party should have the opportunity of being heard on a motion of such importance as this fee has proved on its allowance, that we feel constrained to say that either a special notice should have been given of the motion, or a re-taxation should have been allowed.

As a rule of practice, the evidence upon which such an allowance is made should be preserved in the record. Where such large sums are allowed, and the rights of litigants are likely to be so materially affected, they should not be deprived of having the decree reviewed in an appellate court. But in this case we can see, from the transcript of the record returned to this court, the nature of the services rendered by the attorney, and we can, from it, determine the degree of skill that was employed in rendering the service. And while we can not determine therefrom the precise sum those services were worth, we can see that the sum allowed is out of all proportion to the value of the services rendered and the skill employed. It is so largely out of proportion that we regard it oppressive on the administration of justice. It bears no kind of proportion to the services of the circuit judges of the State who, until recently, received an annual salary of less than this fee, and

their salary is now but a few hundred dollars above the sum here allowed for the labor of but a short time at the most, and only required ordinary legal skill for its performance.

In taxing such fees the chancellor should exercise his own judgment, and not be wholly governed by the opinion of attorneys as to the value of the services. He has the requisite skill and knowledge to form some idea as to what is a fair and reasonable compensation, and he should exercise that judgment. He should, no doubt, consider the opinions of witnesses and evidence of the sum usually charged and paid for such services, but should not be wholly controlled by the opinions of attorneys as to their value. It would seem that to impose such burdens upon the administration of justice, great wrong must be suffered, because many will not be able to pay the fee to enable them to vindicate their rights. If the administration of justice is to be thus burdened, the courts must be virtually closed to many, as but the few can afford to seek their rights. In the absence of other evidence than the bill, decree, report, etc., we are unable to determine what would be a fair compensation for the services for which the fee was allowed. The order taxing the solicitor's fee, and the order of commitment are reversed, and the decree is, in other respects, affirmed. The cause is remanded for further proceedings.

*Decree modified.*