Clarice M. Rasmussen, Appellee, v. Robert V.
Rasmussen, Appellant.

Gen. No. 44,204.

Opinion filed May 24, 1948.
Rehearing denied June 7, 1948.   Released for publication June 8, 1948.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, and CANTWELL & CANTWELL, all of Chicago, for appellant; ROBERT E. CANTWELL, JR. and LOUIS YAGER CANTWELL, both of Chicago, of counsel.

ELMER M. CRANE, IRVING EISENMAN and HARRY ABRAHAMS, all of Chicago, for appellee.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Defendant appeals from that portion of an order entered by the circuit court of Cook county on April 2, 1947, which awarded plaintiff temporary solicitors' fees of $7,250, and appeals from the order of May 6, 1947, which entered judgment for that amount in this action for separate maintenance brought by plaintiff.

The complaint was filed April 18, 1946, and a petition for temporary alimony, solicitors' fees and expense money for prosecuting the suit was filed by her on October 18, 1946, an answer to which was filed. On January 31, 1947, the cause was referred to a master in chancery for the purpose of hearing evidence as to the income and assets of the parties and their needs; and to report the evidence with his findings and recommendations as to temporary support and maintenance of plaintiff and minor child of the parties, and temporary attorneys' fees. The hearings before the master take up 655 pages of the record.

On April 2, 1947, the chancellor entered an order awarding plaintiff "temporary alimony and support money $1,000.00 per month from October 18, 1946 to date; and also the sum of $7,250.00 as and for her

solicitor fees to date.'' The order was in conformity with the findings and recommendations of the master.

It appears from the evidence that Attorney Crane instituted the suit for plaintiff and was her counsel throughout the pendency of the action; that about two months prior to the hearing before the master Attorney Eisenman was employed as associate counsel. For the services of Attorney Crane, the master concluded plaintiff should be allowed $4,500, and for the services rendered by Attorney Eisenman, the sum of $2,750, a total of $7,250, the lump sum allowed in the order entered by the chancellor. Attorney Crane testified that at the time he was retained by plaintiff to represent her, he made a contract with plaintiff to be paid 25 per cent ''on all I am able to secure for my client.'' In accordance with the contract Attorney Crane served an attorney's lien.

As to the financial ability of defendant, the master found the net worth of defendant was in excess of $2,500,000; that the net income of defendant for the year 1946 was in excess of $28,000, and that his salary from the National Tea Company, as its president, for the two years preceding the report of the master, was $20,000 per year and a $10,000 bonus per year. As to the plaintiff, the master found that she had no independent income of her own, except such allowances defendant made to her from time to time.

Defendant contends that the allowance made by the chancellor was erroneous because Attorney Crane having a contract with plaintiff for a contingent fee, his services should not have been considered in fixing the allowance for temporary solicitors' fees; that as to the services of both attorneys for plaintiff, there is no evidence that the amount allowed is the ''usual and customary'' charge, or that the services rendered by them were necessary; that the amount allowed is grossly excessive, even if it be considered that

plaintiff is entitled to an allowance for temporary solicitors' fees.

■ ■ We think there is merit in the contention made as to the allowance for the services of Attorney Crane. The proceeding is a statutory one, and the provision in the statute, par. 22, § 1, ch. 68, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 109.189], authorizes the court to make "such allowance of temporary alimony, attorney's fees and suit money as may appear just and equitable as in cases of divorce." The test for the *pendente* allowance to the wife is the "necessities" of the wife, as shown by the circumstances, and the financial ability of the husband to make the necessary contribution, to the end that in the prosecution of her suit she shall be placed upon an equality with him. *McAdams v. McAdams,* 267 Ill. App. 124, 129. In *Williams v. Williams,* 279 Ill. App. 274, speaking though MR. JUSTICE FULTON, now a member of the Supreme Court, it was said:

"In fixing the *reasonable amount* of solicitors' fees the proper inquiry is as to what is customary for such legal services where contracts have been made with persons competent to contract." (Italics ours.)

citing *Amberson v. Amberson,* 349 Ill. 249. In *Decker v. Decker,* 279 Ill. 300, 308, the test for the allowance was there stated to be the "actual wants and necessities of the wife." Again, in *Herrick v. Herrick,* 319 Ill. 146, 153, it was held:

" . . . the measure of the sum required is necessarily the need of the wife and the ability of the husband to pay. . . ."

■ Tested by the rule in the cases cited, Attorney Crane having contracted with plaintiff on a contingent basis, there was no obligation on plaintiff's part to pay him for any services rendered, except out of recovery eventually made for her in the cause.

■ As to the fee for Attorney Eisenman, it appears from the evidence he had spent 35 to 40 hours in court and before the master, and 115 to 120 hours in preparation for trial. The master, in recommending the allowance for his services, found the allowance to be fair and reasonable. Complaint is now made that there is no evidence as to what is the "usual and customary" fee for services so rendered by Attorney Eisenman, therefore the recommendation of the master and the allowance in the order are without any basis in the record. The duty of the court is to fix a "reasonable" solicitor's fee. The inquiry to determine it is to be directed as to what is "usual and customary" for such legal services (*Amberson v. Amberson*), which merely means that it is one of the forms to be employed in fixing the reasonable amount. If the amount fixed is reasonable, we believe that is all that is required.

In *Metheny v. Bohn*, 164 Ill. 495 at p. 498, the court quoted with approval from *Goodwillie v. Millimann*, 56 Ill. 523 as follows:

"In taxing such fees the chancellor should exercise his own judgment, and not be wholly governed by the opinions of attorneys as to the value of their services. He has the requisite skill and knowledge to form some idea as to what is a fair and reasonable compensation, and he should exercise that judgment. He should, no doubt, consider the opinions of witnesses and evidence of the sum usually charged and paid for such services, but should not be wholly controlled by the opinions of attorneys as to their value."

■ A review of the evidence in this record justifies the conclusion that the allowance recommended by the master for Attorney Eisenman's services—namely, $2,750—is reasonable. Attorney Eisenman had no such contract with plaintiff as did Attorney Crane, and plaintiff became obligated to him for his services. We

cannot say that they were not necessary because she had another attorney. It appears from this record that defendant considered it was necessary for him to have two separate firms of lawyers.

It follows from what we have said that those portions of the orders of April 2 and May 6, 1947, which provide for the allowance of solicitors' fees in the sum of $7,250 and the entry of a judgment for that amount, must be reversed and the cause remanded with directions to enter an order allowing plaintiff the sum of $2,750 to cover the services of Attorney Eisenman, in accordance with the recommendation of the master. In all other respects said orders are affirmed.

*Affirmed in part and reversed in part and remanded.*
NIEMEYER, P. J., concurs.